UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JARLYS ROSGUELL CESPEDES
ORO,

        Case No. 2:26-cv-329-KCD-NPM

        Petitioner,

    v.

MIAMI FIELD OFFICE
DIRECTOR, IMMIGRATION AND
CUSTOMS ENFORCEMENT AND
REMOVAL OPERATIONS, et al.,

        Respondents.

_____/

## ORDER

Petitioner Jarlys Rosguell Cespedes Oro has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 3.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 11.) For the reasons below, the petition is **DENIED**.

## I. Background

Oro is a native of Cuba who was paroled into the United States on or about April 28, 2013. (Doc. 11-1 at 1-2.) His parole expired a few years later.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

(*Id.*) On September 10, 2015, an immigration judge ordered him removed to Cuba. (*Id.* at 25.) He was then removed from the United States to Canada. (*Id.* at 2.)

In 2018, Oro twice entered the United States via the Canadian border. Both times, the prior removal order was reinstated, and he was criminally prosecuted for illegal reentry. The first time, he was again removed to Canada but returned three months later. After the second criminal prosecution, he was released on an order of supervision in 2020. (*Id.*) Oro lived freely in the community under that order for the next five years. (*Id.*)

Everything changed in the fall of 2025. On October 27, 2025, a Deportation Officer determined Oro had been arrested for Robbery Strongarm Domestic Violence in 2024—a violation of the conditions of his Order of Supervision. (*Id.* at 2.) He was placed in immigration custody the same day. (*Id.* at 1-3.) Months later, he filed this emergency petition for a writ of habeas corpus. (Doc. 3.) He argues his removal is not reasonably foreseeable and asks this Court to order his immediate release. (*Id.* at 6-7.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the

3

government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Oro cannot satisfy the initial temporal requirement. ICE took him into custody on October 27, 2025. Because he has been detained for just over four months, he remains squarely within the window in which his detention is presumptively reasonable. *See Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see also Jiang v. Mukasey*, No. 2:08-cv-773-FtM-29DNF, 2009 WL 260378, at *2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-cv698-FtM-29SPC, 2011 WL 6412425, at *2 (M.D. Fla. Dec. 21, 2011).

Recognizing this hurdle, Oro attempts a workaround. He seeks to sidestep the six-month requirement by pointing to an earlier period of detention, arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 3 at 3-4.) By combining these distinct periods of confinement, Oro contends that his total time in civil immigration detention

4

exceeds the six-month threshold, which he asserts is sufficient to rebut the presumption of reasonableness and trigger the *Zadvydas* review.

District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-

5

CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-month period established in *Zadvydas* was designed to provide the government a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all

past detention would force the immediate release of a noncitizen even when their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

Instead, the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the government is acting with an improper motive. If the record reveals a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate. But absent evidence of such bad faith or a deliberate strategy of looping confinement, courts should presume that a subsequent detention is a genuine, independent effort to effectuate removal. This standard strikes the appropriate balance. It alleviates constitutional concerns regarding indefinite, cyclical detention by providing a safeguard against abuse, while simultaneously protecting the government's legitimate, statutory interest in finalizing deportations when logistical or diplomatic circumstances finally permit.

This approach finds support in both the reasoning of *Zadvydas* and the historical foundations of the vehicle Oro employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts

to measure reasonableness in light of the specific circumstances of the case and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at \*3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S. 195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Oro's argument for aggregation falls short. While he points to his prior period of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and rearrest to bypass the six-month presumption or avoid judicial oversight. Without proof

8

of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

Because Oro cannot aggregate his prior confinement, his relevant detention period began on October 27, 2025. At just over four months, he remains within the six-month presumptively reasonable window established in *Zadvydas*. His legal challenge to the length of his detention is therefore premature, and the habeas petition must be **DISMISSED**. However, this dismissal is without prejudice to Oro refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on March 13, 2026.

Kyle C. Dudek
United States District Judge

9